**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

QUAN REN and KUI CAO,

        Plaintiffs,

v.

THE INDIVIDUALS, CORPORATIONS,
LIMITED LIABILITY COMPANIES,
PARTNERSHIPS, and UNINCORPORATED
ASSOCIATIONS IDENTIFIED ON
SCHEDULE A,

        Defendants.

Civil Action No. 2:25-cv-730

## MEMORANDUM ORDER OF COURT[1]

Robert J. Colville, United States District Judge

### I.      Background

In the above-captioned action, Plaintiffs Quan Ren and Kui Cao, who reside in the People's

Republic of China, bring a claim for patent infringement against a number of Defendants, who, as

---

[1] The Court notes that this Memorandum Order is, in many respects, substantively consistent with, if not identical to, other Memorandum Orders entered in similar "Schedule A" cases contemporaneously herewith. The same can be explained simply by the fact that, at least in this Court's experience, Plaintiffs' counsel's filings in Schedule A cases contain similar, if not identical, allegations, assertions, and arguments, and, at times, what are or can fairly be described as "cut and paste" or "cookie cutter" filings. By way of example, Plaintiff's Proposed Temporary Restraining Order itself in this case, which involves a patent for a watch cover, makes reference to a "unique massager which it [sic] subsequently registered with the United States Patent Office" in the proposed factual findings and conclusions of law. *See* ECF No. 3-1 at ¶ 2. The Court believes that it is far more likely that the listing of a massager as opposed to a watch cover indicates a "copy and pasted" paragraph from a previously utilized order in another case where counsel merely forgot to replace "massager" with "watch cover." While a seemingly small, simple, and not entirely uncommon mistake to make, it points out a greater concern with the nature of "copy and pasted" pleadings, particularly in this context. Were the Court to sign the proposed order as prepared and proffered, it would include a fundamental misstatement about the product at issue. Such an order would likely be unenforceable without modification. It bears noting that Plaintiffs' current filings total more than 700 pages, each of which requires Court review before the issuance of injunctive relief, which is sought by Plaintiff on an expedited basis. While the Court accepts its gatekeeper role, it notes that, where a plaintiff seeks the "extraordinary remedy" of injunctive relief, including asset restraint, as to many defendants, the Court expects the plaintiff's filings to not contain material mistakes such as the one identified herein.

alleged, "reside and/or operate . . . Seller IDs in the People's Republic of China and other foreign jurisdictions or redistribute products from the same or similar sources in those locations."[2]  ECF No. 1 at ¶ 16.  Plaintiffs assert that each of the Defendants is manufacturing, distributing, importing, offering for sale, and/or selling products that infringe upon Plaintiff's patent for a "watch cover."  ECF No. 3 at 1.  According to Plaintiffs:

> Defendants conduct business or assist in business conducted throughout the United States (including within the Commonwealth of Pennsylvania and this Judicial District) through the manufacturing, online advertising and offering for sale, and importation and distribution of products that embody infringing versions of Plaintiffs' Watch Cover Patent.

ECF No. 1 at ¶ 17.

Along with the Complaint, Plaintiffs filed: (1) a Motion (ECF No. 3) and supporting brief (ECF No. 4) seeking a temporary restraining order ("TRO"), an order to show cause why a preliminary injunction junction should not issue, and an order allowing for expedited discovery; (2) a Motion (ECF No. 2) seeking to seal this case and the filed documents pending the Court's ruling on the Motion seeking a TRO; (3) a Motion (ECF No. 5) and supporting brief (ECF No. 6) seeking an order permitting Plaintiffs to serve the Defendants via email and electric publication; (4) the Declaration of Plaintiff Quan Ren (ECF No. 7); (5) the Declaration of Plaintiff's Counsel Michael Mitchell (ECF No. 8); and (6) a Motion to Exceed Page Limit (ECF No. 9) as to the Brief filed at ECF No. 4.[3]  Plaintiffs seek to enjoin Defendants from making, using, offering for sale, selling, and/or importing Defendants' allegedly infringing products.  Plaintiffs also request a temporary restraint of the Defendants' assets.  For the reasons that follow, the Court will deny

---

[2] The fifty-one Defendants are identified in Schedule A of the Complaint (ECF No. 1).

[3] As noted, Plaintiffs have already filed their brief, and the Court has reviewed it in its entirety.  Accordingly, the Motion to Exceed Page Limit is granted.

Plaintiffs' requests for a TRO, for an order to show cause why a preliminary injunction should not issue, and for expedited discovery.

## II.    Applicable Legal Standards

With respect to the standard for the issuance of a preliminary injunction, the United States Court of Appeals for the Third Circuit has explained:

The decision to issue a preliminary injunction is governed by a four-factor test:

> To obtain an injunction, the plaintiffs had to demonstrate (1) that they are reasonably likely to prevail eventually in the litigation and (2) that they are likely to suffer irreparable injury without relief.  If these two threshold showings are made the District Court then considers, to the extent relevant, (3) whether an injunction would harm the [defendants] more than denying relief would harm the plaintiffs and (4) whether granting relief would serve the public interest.

*K.A. ex rel. Ayers v. Pocono Mountain Sch. Dist.*, 710 F.3d 99, 105 (3d Cir. 2013) (quoting *Tenafly Eruv Ass'n v. Borough of Tenafly*, 309 F.3d 144, 157 (3d Cir. 2002)).  The requirements for a temporary restraining order are the same as those for a preliminary injunction.  *Saluck v. Rosner*, C.A. No. 98-5718, 2003 WL 559395, at *2 (E.D. Pa. Feb. 25, 2003).  "Preliminary injunctive relief is 'an extraordinary remedy' and 'should be granted only in limited circumstances.'"  *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004) (quoting *American Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1427 (3d Cir. 1994)).  "[O]ne of the goals of the preliminary injunction analysis is to maintain the status quo, defined as the last, peaceable, noncontested status of the parties."  *Kos Pharms.*, 369 F.3d at 708 (quoting *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 197 (3d Cir. 1990)).  The court may issue a preliminary injunction only on notice to the adverse party.  Fed. R. Civ. P. 65 (a)(1).

Under the Federal Rules of Civil Procedure, district courts are authorized to exercise personal jurisdiction over non-residents to the extent permissible under the law of the state in

which the district court is located.  Fed. R. Civ. P. 4(e); *North Penn Gas Co. v. Corning Nat. Gas Corp.*, 897 F.2d 687, 689 (3d Cir. 1990).  In exercising personal jurisdiction, the court must first ascertain whether jurisdiction exists under the forum state's long-arm jurisdiction statute and then determine whether the exercise of jurisdiction comports with the due process clause of the Fourteenth Amendment to the Constitution.  *Van Buskirk v. Carey Canadian Mines, Ltd.*, 760 F.2d 481, 489-90 (3d Cir. 1985).  This inquiry has been collapsed in Pennsylvania, as the Pennsylvania long-arm statute provides that: "the jurisdiction of the tribunals of this Commonwealth shall extend to all persons . . . to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States."  42 Pa.C.S.A. § 5322(b); *Van Buskirk*, 760 F.2d at 490.  The reach of the Pennsylvania long-arm statute is thus "coextensive" with the due process clause.  *North Penn Gas*, 897 F.2d at 690.  The due process clause permits the court to assert personal jurisdictional over a nonresident defendant who has "certain minimum contacts with [the forum] such that the maintenance of [a] suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quotations omitted).

    "A court may assert general jurisdiction over foreign (sister-state or foreign-country) [defendants] to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State."  *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014)).  The "paradigm" forums where a corporate defendant is at home are the corporate defendant's place of incorporation and its principal place of business.  *BNSF Ry. Co.*, 137 S. Ct. at 1558 (citing *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)).  "The exercise of general jurisdiction is not

4

limited to these forums; in an 'exceptional case,' a corporate defendant's operations in another forum 'may be so substantial and of such a nature as to render the corporation at home in that State.'" *Id.* (quoting *Daimler*, 571 U.S. at 139 n.19). General jurisdiction has not been established in this case.

Specific jurisdiction is appropriate only if the plaintiff's cause of action arises out of a defendant's forum-related activities, "such that the defendant 'should reasonably expect being haled into court'" in that forum. *Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Prod. Inc.,* 75 F.3d 147, 151 (3d Cir. 1996) (quoting *Worldwide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)). The Third Circuit has explained the three-part analysis for specific jurisdiction. "First, the defendant must have 'purposefully directed [its] activities' at the forum. Second, the litigation must 'arise out of or relate to' at least one of those activities. And third, if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise 'comport[s] with fair play and substantial justice.'" *O'Connor v. Sandy Lane Hotel,* 496 F.3d 312, 317 (3d Cir. 2007) (internal citations omitted). To find that a plaintiff's claims "arise out of or relate to" the defendant's contacts with the forum state, the Third Circuit requires "a closer and more direct causal connection than that provided by the but-for test." *Id.* However, the required causal connection is looser than the tort concept of proximate causation. *Id.* (citing *Miller Yacht Sales, Inc. v. Smith,* 384 F.3d 93, 99-100 (3d. Cir. 2004)). The appropriate analysis is fact-intensive, focusing on the "reciprocity principle upon which specific jurisdiction rests" -- whether the defendant received the benefits and protections of a state's laws to the extent that it should, as a quid pro quo, submit to the burden of litigation in the state. *Id.* at 323.

As noted, each of the Defendants is alleged to be a foreign entity. Federal Rule of Civil Procedure 4(k)(2) provides:

(2) Federal Claim Outside State-Court Jurisdiction.  For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if:

> (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and

> (B) exercising jurisdiction is consistent with the United States Constitution and laws.

Fed. R. Civ. P. 4(k)(2).  Accordingly, in order for a court to exercise personal jurisdiction over a foreign defendant pursuant to Fed. R. Civ. P. 4(k)(2):

> (1) there must be a claim arising under federal law; (2) the defendant must be beyond the jurisdictional reach of any state court of general jurisdiction; and (3) the defendant must have sufficient contacts with the United States as a whole so that the court's exercise of personal jurisdiction over the defendant comports with the due process requirements of the Constitution or other federal law.

*Skold v. Galderma Labs., L.P.*, 99 F. Supp. 3d 585, 603 (E.D. Pa. 2015).  "Rule 4(k)(2) was adopted to ensure that federal claims will have a U.S. forum if sufficient national contacts exist."  *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico*, 563 F.3d 1285, 1295 (Fed. Cir. 2009) (citing Fed. R. Civ. P. 4(k)(2) advisory committee notes to 1993 amendment).

## III.    Analysis

As to the first factor, likelihood of success on the merits, "a sufficient degree of success for a strong showing exists if there is a reasonable chance or probability[ ] of winning."  *Xie v. GUANHE Home essentials*, No. 2:25-CV-00265, 2025 WL 1039233, at *2 (W.D. Pa. Apr. 8, 2025) (quoting *Ramsay v. Nat'l Bd. of Med. Exam'rs*, 968 F.3d 251, 256 (3d Cir. 2020)).  "Because Plaintiff will ultimately have to establish personal jurisdiction by a preponderance of the evidence, the precise question before the Court now is whether Plaintiff has established 'a reasonable probability' that [Plaintiff] will be able to establish personal jurisdiction by a preponderance of the

evidence." *Xie*, 2025 WL 1039233, at *2 (citing *Control Screening LLC v. Tech. Application & Prod. Co. (Tecapro), HCMC-Vietnam*, 687 F.3d 163, 167 (3d Cir. 2012)).

"In the context of e-commerce, 'the mere operation of a commercially interactive web site'—even if accessible in the relevant forum—is insufficient to establish minimum contacts and therefore personal jurisdiction." *Xie*, 2025 WL 1039233, at *2 (citing *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 454 (3d Cir. 2003)). Rather, the plaintiff must show that that the defendant has purposefully availed itself of the privilege of conducting activities within the forum state "by directly targeting its web site to the state, knowingly interacting with residents of the forum state via its web site, or through sufficient other related contacts." *Id*.

At this juncture and on this record, Plaintiffs have not met their burden of establishing a reasonable probability that they will eventually be able to establish, by a preponderance of the evidence, personal jurisdiction over the Defendants. Initially, the Court rejects any argument by Plaintiffs that the maintenance of a commercial website through which Defendants advertise and sell products worldwide, including in Pennsylvania, alone is sufficient to establish minimum contacts. *See Xie*, 2025 WL 1039233, at *4 ("[T]he operation of an online storefront from which Pennsylvania residents can make purchases if they so choose—standing alone—is insufficient to establish minimum contacts with Pennsylvania."). In their briefing, *see* ECF No. 4 at 5-6, this is Plaintiffs' primary argument in support of personal jurisdiction, and it is one that has been roundly, and repeatedly, rejected by courts, including this one.

That said, Plaintiffs also allege that the Defendants maintain such websites *and* that the Defendants "have transacted business with consumers located in the U.S., including Pennsylvania, for the sale and shipment of the Infringing Products." ECF No. 1 at ¶ 15 (emphasis added). Plaintiff further alleges that "each of the Defendants is committing tortious acts in Pennsylvania

via offering for sale and/or sale of their infringing goods through their online marketplaces, is engaging in interstate commerce, and has wrongfully caused Plaintiffs substantial injury in the Commonwealth of Pennsylvania." *Id.* at ¶ 28 (emphasis added). The Court finds this equivocal language to be telling.[4] The Defendants sell products to U.S. customers, and possibly in Pennsylvania, which is in the U.S. The Defendants also offer to sell and/or sell their products to Pennsylvania residents. The second seemingly guarded allegation, potentially, betrays Plaintiffs' true basis for asserting personal jurisdiction, Defendants' online storefronts. *See* ECF No. 4 at 6 ("Therefore, this Court has personal jurisdiction over Defendants because they have *intentionally advertised and sought out to do business in Pennsylvania utilizing their Store IDs and websites* to offer for sale and/or sell infringing products" (emphasis added)); ECF No. 7 at ¶ 7 ("We have identified numerous fully interactive e-commerce stores, including those operating the Seller IDs, which were offering for sale and/or selling infringing products embodying the Asserted Patent to consumers in this Judicial District and throughout the United States." (emphasis added)).[5]

With respect to these allegations, Plaintiffs have not clearly pled that each and every Defendant transacts actual business in this state. *See FORCEL MEDIA LIMITED, Plaintiff, v. DecYI, et al., Defendants.*, No. 2:25-CV-750, 2025 WL 1665586, at *2 (W.D. Pa. June 12, 2025) ("Without a showing that sales and shipments of Defendants' infringing products at issue here were made to Pennsylvania, the Court would not be satisfied that personal jurisdiction exists."). Plaintiffs are represented by sophisticated and experienced counsel, who is more than capable of clearly pleading the basis for personal jurisdiction in this case. If, on information and belief,

---

[4] It bears noting that the Court has pending before it at least two other lawsuits involving Plaintiffs' counsel wherein substantively identical equivocal allegations are set forth in each of the complaints.

[5] *See also* ECF No. 4 at 6 ("Whether a Defendant physically shipped Infringing Products into Pennsylvania is not determinative of whether personal jurisdiction exists, as courts in this Circuit examine a given defendant's online interactions with consumers in considering whether a particular defendant has transacted business in the forum state.").

Plaintiffs believed that each and every Defendant had sold products into this state, Plaintiffs should have so stated, and done so unequivocally.

Further, the attachments to Plaintiffs' Complaint at ECF Nos. 1-8 through 1-9 are not evidence of sales, but rather screenshots of online shopping carts that indicate that the Defendants would ship to Pittsburgh, Pennsylvania if an order were placed.  They are not receipts, and, again, the Court believes that these images are indicative of Plaintiffs' belief that maintaining an online storefront that could allow shipment to this District alone would be sufficient to establish jurisdiction.  Again, it is not.  *See Xie*, 2025 WL 1039233, at *4.  Even if these documents were all receipts for purchases by a Pennsylvania customer, it appears likely to this Court that these screenshots were produced by Plaintiffs or counsel for purposes of establishing jurisdiction, given the general consistency in ZIP Codes in the documents.[6]  Such a practice is insufficient to establish personal jurisdiction:

> Moreover, the screenshots attached to the complaint do not reflect that these are arms-length sales.  If [plaintiff] or its counsel or agents simply ordered these products to create personal jurisdiction, that doesn't work.  *See Nifty Home Prods. Inc. v. Ladynana US*, No. 23-1332, 2024 WL 4987245, at *3 (3d Cir. Dec. 5, 2024) (finding, in context of review of district court's denying motion to vacate default judgment, a "colorable argument" that single sale from each defendant into Pennsylvania—set up by plaintiff in each instance—was insufficient to show purposeful availment); *Toys "R" Us, Inc.*, 318 F.3d 446 at 454-55 (two sales orchestrated by the plaintiff insufficient to establish personal jurisdiction because these two sales "appear to be the kind of 'fortuitous,' 'random,' and 'attenuated' contacts that the Supreme Court has held insufficient to warrant the exercise of jurisdiction"); *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1095 (9th Cir. 2023) (finding personal jurisdiction over defendants using their Amazon storefronts to make sales to residents in forum state, but requiring that such sales "must   occur   in   the   defendant's   regular   course   of   business").

---

[6] The Court identified three total ZIP Codes that were listed as the potential shipping address in the nearly 244 pages of shopping cart screenshots.  Nearly all other possible identifying information has been redacted from these documents.

*FORCEL MEDIA*, 2025 WL 1665586, at *2.  In short, Plaintiffs have not established a reasonable probability that they will be able to establish, by a preponderance of the evidence, that all of the Defendants are subject to personal jurisdiction in Pennsylvania under 42 Pa.C.S.A. § 5322.

Plaintiffs likewise fail to make a sufficient showing that they will be able to establish personal jurisdiction by a preponderance of the evidence under Rule 4(k)(2) as to all Defendants. Under that Rule, a plaintiff must establish that the defendant is beyond the jurisdictional reach of any state court of general jurisdiction.  Given the general allegations in Plaintiffs' Complaint respecting sales into the U.S., it seems entirely likely that many of the Defendants, if not all of them, would be subject to jurisdiction in at least one forum.  While it is not clear that Pennsylvania is an appropriate forum, it is equally unclear, on this record, that Plaintiffs are likely to establish by a preponderance of the evidence that each of the Defendants is beyond the jurisdictional reach of any other state.  Given that this is a threshold issue, the Court finds that the issuance of a TRO or an order directing Defendants to show cause as to why a preliminary injunction should not issue is not appropriate.

Further, the Court agrees with the analysis set forth in the recent Memorandum Order entered by Judge Ranjan in *FORCEL MEDIA*, wherein he discussed sincere concerns respecting misjoinder in a similar Schedule A case.  *See FORCEL MEDIA*, 2025 WL 1665586, at *2-4.  In that case, Judge Ranjan explained:

> The Court questions the propriety of joinder of 103 defendants under Rule 20.  Rule 20(a)(2) allows a plaintiff "to join all defendant sellers in one action if the claims arise out of the same transaction, occurrence, or series of transactions or occurrences."  *Viking Arm AS v. P'hips & Unincorporated Ass'ns Identified on Schedule A*, No. 24-1566, 2024 WL 2953105, at *1 (N.D. Ill. June 6, 2024).  Under Rule 21, the Court "may at any time, on just terms, add or drop a party."  Fed. R. Civ. P. 21.
>
> As courts in the Northern District of Illinois have "time and again" held in the context of similar Schedule A cases, "it is not enough for a plaintiff to simply allege

that multiple defendants have infringed the same patent or trademark to meet Rule 20's requirements." *Estee Lauder Cosms. Ltd. v. P'ships & Unincorporated Ass'ns Identified on Schedule A*, 334 F.R.D. 182, 187 (N.D. Ill. 2020). This is because, absent some sort of connection among the defendants, "one defendant's alleged infringement does not arise out of the same transaction, occurrence, or series of transactions of occurrences as another defendant's unrelated infringement." *Id.*

*FORCEL MEDIA*, 2025 WL 1665586, at *2.

"It is well established . . . that 'simply committing the same type of violation in the same way does not link defendants together for the purposes of joinder.'" *Viking Arm AS v. Partnerships & Unincorporated Associations Identified on Schedule A*, No. 24 C 1566, 2024 WL 2953105, at *2 (N.D. Ill. June 6, 2024) (quoting *Bose Corp. v. P'Ships & Unincorporated Ass'ns Identified on Schedule A*, 334 F.R.D. 511, 514 (N.D. Ill. 2020)). Plaintiffs in this case advance just such an unsupportable argument. *See* ECF No. 4 at 16 ("The allegations in Plaintiffs' Complaint in the instant case demonstrate that the Defendants *are acting in almost identical manner and during the same or substantially similar time frame to sell infringing products*—collectively in the same occurrence of mass harm—and thus show a logical relationship between them that supports joinder."). Like the plaintiff in *FORCEL MEDIA*, the Plaintiffs in this case assert that joinder is appropriate for the following reasons:

> (1) Defendants often operate under multiple fictious aliases and/or appear to be an interrelated group of infringers, (2) Defendants' internet stores share same or similar registration patterns, accepted payment methods, check-out methods, prices and quantities, keywords, stock images, infringing product descriptions, (3) Defendants' infringing products bear similar irregularities that suggest they came from a common source, (4) infringers typically communicate with each other through group chats and websites to discuss tactics for operating multiple accounts and evading detection, and (5) infringers commonly operate under multiple seller aliases to evade enforcement efforts and conceal their identities.

*FORCEL MEDIA*, 2025 WL 1665586, at *3; *see* ECF No. 1 at ¶¶ 36-42.

While the complaint in *FORCEL MEDIA* is not currently publicly available for review on the online docket, the Court believes it is at least possible, if not entirely likely, that the joinder

allegations in both this case and *FORCEL MEDIA* are substantively, if not entirely, identical.[7]  As Judge Ranjan held, these generally pled allegations are conclusory assertions unsupported by sufficient facts.  *FORCEL MEDIA*, 2025 WL 1665586, at *3.  The Court is, on this record, unconvinced that there is a connection between the Defendants, let alone one that is shared by all of them.  As noted by Judge Ranjan, courts in the Northern District of Illinois have routinely rejected arguments such as those raised by Plaintiffs in support of joinder in this case.  *See id.* ("[E]xperience has shown that, while some individual defendants may operate several online stores, and while some individual defendants may coordinate with other defendants before or after the filing of the infringement action, rarely, if ever, have all defendants named in a Schedule A case worked together." (quoting *Dongguan Juyuan Precision Tech. Co., Ltd. v. The P'ship and Unincorporated Ass's Identified on Schedule A*, No. 24-cv-11301, ECF 5 at 1 (N.D. Ill. Nov. 4, 2024))).  Similarly, the Court finds that the exhibits attached to Plaintiffs' Complaint are not sufficient to support an inference that there is any relationship between all fifty-one of the Defendants.  *Id*.

    "[E]ven where joinder is permissible under Rule 20, a Court may exercise its discretion to sever or drop defendants if it concludes that doing so would further the interests of judicial economy without prejudice to any party."  *FORCEL MEDIA*, 2025 WL 1665586 at *4 (quoting *Malibu Media, LLC v. Surgent*, No. 12-3905, 2013 WL 1704289, at *2 (D.N.J. Apr. 19, 2013)).  The Court again agrees with Judge Ranjan's holding in *FORCEL MEDIA* that "allowing joinder in this case would undermine judicial economy, is not in the interest of justice, and hampers the Court's ability to conduct meaningful review of the merits of the case," and finds that it is equally true in this case involving fifty-one seemingly unrelated Defendants.  In short, Plaintiffs have not

---

[7] The joinder allegations in two other Schedule A cases (25-cv-184 and 25-cv-790) pending before the undersigned and filed by Plaintiffs' counsel contain identical joinder allegations to those set forth in this case.

established a likelihood of success in this case because it appears that the Defendants cannot and/or should not be joined in this matter.

Finally, the Court finds that the balancing of the equities factor does not support the issuance of a TRO on this record. "Irreparable harm is presumed when a clear showing of patent validity and infringement has been made." *Impax Lab'ys, Inc. v. Aventis Pharms., Inc.*, 235 F. Supp. 2d 390, 395 (D. Del. 2002). Plaintiffs have made a sufficient showing, at least at this stage of the proceedings, that they maintain a valid patent and that Defendants have infringed that patent. Accordingly, Plaintiffs have sufficiently established irreparable harm at this stage.

That said, "[t]he more likely a plaintiff is to succeed on the merits, the less the balance of the equities needs to tip in her favor." *Xie*, 2025 WL 1039233, at *10. This Court has already concluded that Plaintiffs have failed to establish a likelihood of success on the merits for two distinct and important threshold reasons. While Plaintiffs are likely to sustain lost sales, which can clearly be remedied by the payment of damages, and potential loss of reputation and goodwill in the marketplace, the Court is not convinced that the scales tip in Plaintiffs' favor at this time.

A preliminary injunction would impede Defendants from operating their businesses. *See FORCEL MEDIA*, 2025 WL 1665586 at *4 ("Also problematic is that the requested TRO not only enjoins Defendants from using Forcel's trademarks, but also directs the online marketplace platforms to freeze all accounts connected to Defendants' seller aliases. This relief would greatly interfere with Defendants' business operations and is far too broad, particularly given the number of Defendants in this case and the lack of information about the proportion of non-infringing sales to infringing sales as to each Defendant."). Further, while Plaintiffs have generally argued that the Defendants "are likely to move assets into offshore accounts outside of the Court's jurisdiction, there isn't a sufficient basis to support [the] 'all-encompassing claim that all of the listed

defendants are . . . similarly situated in the context of possible asset transfers.'" *Id.* at *5 (quoting *Tang v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule A*, No. 21-14431, 2022 WL 1664116, at *3 (S.D. Fla. Feb. 28, 2022).  In a case where it is possible, if not likely, that this Court lacks jurisdiction over the Defendants and that the Defendants cannot be properly joined, the Court finds that the relief sought by way of the Motion for TRO represents the greater of the harms.  Accordingly, this factor weighs in favor of denying Plaintiffs' request for a preliminary injunction.

## Conclusion and Order of Court

For the reasons discussed above, it is hereby ORDERED as follows:

1) Plaintiffs' Motion (ECF No. 3) seeking a TRO, an order to show cause why a preliminary injunction junction should not issue, and an order allowing for expedited discovery is denied.

2) Plaintiffs' Motion to Exceed Page Limit (ECF No. 9) is granted.

3) Plaintiffs' Motion (ECF No. 2) seeking to maintain this case under seal is granted to the extent that the Court will maintain the current filings, with the exception of this Memorandum Order, under seal at this time, pending the Court's consideration of the upcoming briefing on the threshold jurisdictional and joinder issues discussed herein.

4) Plaintiffs' Motion (ECF No. 5) seeking an order permitting Plaintiffs to serve the Defendants via email and electric publication is denied without prejudice, again pending the Court's consideration of the upcoming briefing on the threshold jurisdictional and joinder issues discussed herein.

5) Plaintiffs are hereby ordered to show cause as to why this case should not be severed or dismissed for misjoinder by July 28, 2025. In the alternative, Plaintiffs may file an amended complaint by the same date in an attempt to cure the deficiencies discussed in this Memorandum Order.

BY THE COURT:

*/s/Robert J. Colville*
Robert J. Colville
United States District Judge

DATED: July 7, 2025

cc: All counsel of record